IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **LESLIE VENUS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | NO. 09-CV-956-WDS |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| *Commissioner of Social Security*, | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM & ORDER**

**STIEHL, District Judge:**

Before the Court is the Report and Recommendation of United States Magistrate Judge Clifford J. Proud (Doc. 32). The magistrate judge finds that the ALJ's decision is supported by substantial evidence in the record as a whole and that no errors of law were made. He therefore recommends that the Court affirm the final decision of the Commissioner that plaintiff is not disabled. Plaintiff Leslie Venus has timely filed objections to the Report and Recommendation (Doc. 33). Defendant Commissioner of Social Security has not responded. Upon review of the record, the Court **ADOPTS** the Report and Recommendation of Magistrate Judge Clifford J. Proud (Doc. 32). Pursuant to 18 U.S.C. § 636(b), the Court will review *de novo* those portions of the Report and Recommendation to which objections were filed.

**BACKGROUND**

Plaintiff originally applied for Social Security Income on October 26, 2005. The Social

1

Security Administration denied her application initially and again upon reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ) and a hearing was held before ALJ Sherwin F. Biesman, who denied plaintiff's application. Plaintiff's subsequent request for review by the Appeals Council was denied. Thus, the ALJ's decision became the final decision of the Commissioner of Social Security. Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Plaintiff raises three issues in her objection to the Report and Recommendation: (1) she argues that the ALJ did not follow the proper procedure in determining plaintiff's residual functional capacity (RFC) for her alleged wrist disability and lifting limitations; (2) she objects to the ALJ's finding that plaintiff lacked credibility, which the ALJ based primarily on Dr. Kosmicki's Test of Memory Malingering (TOMM); (3) and she maintains that the ALJ did not give sufficient weight to the opinions of Dr. Thomas, as a longtime treating physician. Plaintiff asks the Court to reject the Report and Recommendation and remand this matter to the Commissioner for a new hearing.

## DISCUSSION

**Social Security Guidelines**

To receive disability benefits, a plaintiff must be disabled. A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities that can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and that prevent the person from performing previous work and any other kind of substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(1)(A) & (2)(A), 1382c(a)(3)(B) & (D).

The Social Security regulations provide for a five-step sequential inquiry for determining

whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner must consider in sequence: (1) whether the plaintiff is currently employed and doing substantial gainful activity, (2) whether the plaintiff has a severe medically determinable physical or mental impairment or combination of impairments, (3) whether the impairment meets or equals one listed by the Commissioner, and whether it meets the duration requirement, (4) whether the plaintiff has the residual functional capacity to return to doing his or her past work, and (5) whether the plaintiff is capable of making an adjustment to some other type of work available in the national economy. *Id*.

If the Commissioner finds that the plaintiff is disabled or not disabled at any step, the evaluation process stops. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or five, then there is a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App'x 1. However, if the impairment is not so listed, the Commissioner assesses the plaintiff's residual functional capacity, which in turn is used to determine whether the plaintiff can perform past work under step four or any other work in society under step five. § 404.1520(e). The plaintiff bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. *Briscoe ex rel. Taylor*, 425 F.3d at 352.

**Standard of Review**

Under the Social Security Act, a court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" of proof. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Butera v. Apfel*, 173 F.3d 1049,

1055 (7th Cir. 1999). The standard is satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. An ALJ need not address every objective finding in the record for his judgment to be supported by substantial evidence; the ALJ "need only build a bridge from the evidence to his conclusion." *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002) (quoting *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000)). Further, the Seventh Circuit urges "a commonsensical reading" of a plaintiff's medical history, "rather than nitpicking at it." *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999). But an ALJ's decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex. rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)); *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004).

The court will consider the entire administrative record but will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez ex. rel. Lopez*, 336 F.3d at 539 (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

## ANALYSIS

### A. Plaintiff's Wrist

Plaintiff first objects to the Report and Recommendation because, she alleges, it does not sufficiently address whether the ALJ applied the proper legal standard to make a determination regarding her lifting limitations. She says to determine a claimant's residual functional capacity (RFC), the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ." SSR 96-8p. That is, the ALJ

4

should not state the RFC initially in terms of exertional categories (such as "sedentary," "light," "medium," or "heavy " work). She says the ALJ skipped the first step and went straight to the exertional categories where he concluded: "[Plaintiff] has the [RFC] for work at all exertional levels that does not require more than simple and repetitive tasks." Thus, plaintiff believes the ALJ neglected to make specific determinations of plaintiff's ability to sit, stand, walk, lift, or carry (especially lifting ability).

Plaintiff either misreads the ALJ's decision or the regulations. The RFC is only used after step three of the sequential evaluation process in order to proceed to steps four and five. 20 CFR § 416.920(a)(4). The ALJ did not get that far. His analyis correctly stopped at steps two and three because he did not find plaintiff's wrist condition was severe or that it met or equaled one listed by the Commissioner. *See* § 416.920(a)(4)(ii), (iii). This required a finding that plaintiff was not disabled. *See id.* And once the ALJ makes a finding of disabled or not disabled at a step, he does not go on to the next step. § 416.920(4). Accordingly, there was no need for the ALJ to determine plaintiff's RFC relating to her wrist and he did not do so. The RFC found by the ALJ refers to plaintiff's impairment of low average to borderline intellectual functioning (Tr. 9 & 13).

The Report and Recommendation concludes that the record contained little evidence of wrist problems and reminds plaintiff that it was her burden to supply adequate records and evidence to prove her claim of disability, *see* 20 C.F.R. § 404.1512(c), and these records and evidence must relate to the time period during which the plaintiff claims to be disabled. *Id.* There was only one doctor visit for treatment of plaintiff's wrist, and plaintiff was diagnosed with degenerative joint disease (Tr. 118). Two years before plaintiff's alleged date of disability, Dr. Ballesteros evaluated plaintiff and found that she had limited motion in her right hand. Dr. Chapa's examination of

5

plaintiff's wrist concluded that her wrist joint was "quite stable" and that she had good hand grip on both sides and was able to perform both fine and gross manipulations with both hands. Dr. Chapa observed that plaintiff lacked some range of motion, but had normal upper extremity strenght on both sides. Further, at her hearing, plaintiff did not testify to any physical complaints. The ALJ noted that plaintiff attested to problems using her right hand and that her wrist pops out and hurts, yet she was doing housework, cooking, paying bills, shopping, caring for her children, and maintained a driver's license (Tr. 10). She also was not taking any strong pain medication for her wrist. The ALJ concluded at step two of the five-step sequential evaluation process under 20 CFR § 416.920 that plaintiff's wrist condition was not severe or limiting. He also found under step three that no impairment merited consideration under the listings.

The Report and Recommendation finds, and the Court agrees, that the ALJ's determination regarding plaintiff's wrist is supported by substantial evidence in the record as a whole and that no errors of law were made.

## B. The ALJ's Credibility Assessment

Dr. Thomas diagnosed plaintiff with bipolar disorder and general anxiety disorder (Tr. 157–77, 181–83) and found significant limitations due to mental impairments (Tr. 153–55). As with plaintiff's wrist, however, the ALJ found that these alleged mental impairments were not severe or limiting. The Report and Recommendation finds substantial evidence in the record for the ALJ's credibility findings and observes that plaintiff does not attack the credibility findings directly. Instead, plaintiff objected more specifically to the ALJ's reliance on the results of the Test of Memory Malingering (TOMM) to undermine her overall credibility and Thomas's diagnoses.

Plaintiff objects to the Report and Recommendation now on the same basis.

An ALJ's credibility determinations "are entitled to special deference." *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010) (citing *Simms v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). They will, therefore, only be overturned if they are "patently wrong." *Id.* (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). As discussed above, the ALJ is required to build "an accurate and logical bridge between the evidence and the result." *Castile*, 617 F.3d at 929 (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)); *Sims*, 309 F.3d at 429. In spite of the special deference generally given to an ALJ's credibility determinations, a court has "greater freedom to review credibility determinations based on objective factors or fundamental implausibilities, rather than subjective considerations." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005) (ALJ gave no reasons based in the record for adverse credibility determination).

The Court cannot find the ALJ's adverse credibility determination was patently wrong. Plaintiff's argument is unpersuasive both because the ALJ was justified in making a credibility determination based on the TOMM results, and because his credibility determination went beyond the TOMM results themselves.[1]

Moreover, as discussed in the Report and Recommendation, the ALJ found that plaintiff's credibility, and consequently Thomas's opinions, were further damaged by "her activities, her

---

[1] Plaintiff argues that Kosmicki, who administered the TOMM, specifically stated that the results related only to alleged cognitive deficits and that he had not assessed exaggeration or feigning of psychiatric symptoms or emotional problems. It is true that Kosmicki did not assess exaggeration or feigning of psychiatric symptoms. But the ALJ noted that the TOMM, according to Kosmicki, is "greatly affected by effort." Plaintiff underestimates the force of Kosmicki's conclusion that plaintiff's results "raise *serious questions regarding effort* and the possibility of false or exaggerated claims of deficits on cognitive performance" (emphasis added). That is no light accusation. The Court cannot say it is patently wrong to make a general credibility conclusion based, in part, on plaintiff's suspect effort on a psychological test.

reasons for not working and from other factors" (Tr. 11). He did not rely solely on the TOMM results. Regarding activities, the ALJ noted that, despite plaintiff saying she has problems using her right hand and that it pops out and hurts, she "admits to doing the housework, cooking, paying bills, shopping, caring for her children, and maintains a valid driver's license" (Tr. 10). Her wrist testimony further sounded inconsistent because she was not taking any strong pain medication, there was no recent treatment, and she did not complain about it at the hearing. The ALJ found plaintiff's reason for not working was inconsistent as well. She testified at the hearing that she had left her job at the factory because of her wrist, yet she had said previously that she took maternity leave (Tr. 10, 27). In conclusion, the Court **FINDS** that the ALJ's decision regarding plaintiff's credibility in general is supported by substantial evidence in the record as a whole.

As an aside, plaintiff objects to the Report and Recommendation for appearing to justify the ALJ's findings with analysis the ALJ did not actually use. *See Univ. Hospitals & Clinics v. Shalala*, 180 F.3d 943, 953 (8th Cir. 1999). The Court disagrees. The ALJ's analysis is apparent; the Report and Recommendation did no more than attempt to make it more explicit.[2]

**C. ALJ's Evaluation of Dr. Thomas's Opinions**

Plaintiff argues that the ALJ did not give appropriate weight to the opinions of Dr. Thomas, her treating physician with a long history of regular treatment of plaintiff. *See* 20 C.F.R. § 416.927(d). Accordingly, plaintiff believes Thomas's opinion deserved greater weight than those of the "one-time state agency evaluators."

---

[2] The Report and Recommendation states: "It was entirely reasonable for the ALJ to conclude that, if plaintiff exaggeratd her symptoms in the area tested by TOMM, she probably also exaggerated her symptoms in the areas that were relevant to Dr. Thomas' treatment" (Doc. 32, p. 13).

In according weight to medical records, a treating physician is generally given more weight than a nontreating physician. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. § 416.927(d)(1). A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record. *Clifford*, 227 F.3d at 870; *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); § 416.927(d)(2). When a treating physician is not given controlling weight, the Commissioner considers the length of the treatment relationship and frequency of examinations, the nature and extent of the treatment relationship, supportability with relevant evidence (particularly medical signs and laboratory findings), consistency with the record as a whole, specialization of the physician, and other factors. § 416.927(d)(2)–(6). The Commissioner is charged with determining the "ultimate issue of disability," however. *Clifford*, 227 F.3d at 870; 20 C.F.R. § 404.1527(e).

Plaintiff argues that the ALJ did not give sufficient weight to Thomas's opinion that plaintiff suffers from anxiety, bipolar disease, and depression. Specifically, she maintains that, as a treating physician with a long history of regular treatment, Thomas's opinion should have been given more weight than the one-time state agency evaluators. Plaintiff's argument that the ALJ did not afford sufficient weight to Thomas is belied by how thoroughly the ALJ evaluated Thomas's records and opinions. The ALJ noted that plaintiff saw Thomas on a monthly basis for three years. Thus he took into account the length of the treatment relationship and frequency of examinations. *See* § 416.927(d)(2)(i). Ultimately, however, the ALJ concluded that Thomas's opinions were not well-supported and not consistent with other substantial evidence in the record. *See* § 416.927(d)(2).

The ALJ was "not impressed" with Thomas's records or opinions because his notes primarily

9

restated plaintiff's complaints (Tr. 11). In light of plaintiff's lack of credibility, as discussed above, the fact that Thomas relied primarily on plaintiff's own complaints rendered his opinions "highly suspect" (Tr. 11). The ALJ also found the data unremarkable in terms of "signs"[3] (*id.*). Thus, he considered whether Thomas's findings were supported with relevant evidence. *See* § 416.927(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). The ALJ acknowledged that some of Thomas's entries, in late 2008, did show objective signs and commented that plaintiff was very symptomatic. The ALJ concluded, however, that that was not the norm; Thomas assessed plaintiff as partially improved by January 2009. After that, data suggested to the ALJ that "any period of exacerbation was short-lived" (*id.*). He noted that plaintiff seemed to be responding well to Thomas's treatment. Plaintiff's mental-status examinations consistently describe her as friendly and cooperative. Where Thomas recorded signs of depression and anxiety, he did so "in terms of self-report, not observed abnormalities" (Tr. 11).

The ALJ found that Thomas's diagnoses of bipolar disorder and generalized anxiety disorder appeared consistent with the underlying objective data. Thus, again, the ALJ considered the supportability of Thomas's opinions with relevant evidence and consistency with the record as a whole.

While discussing Thomas's notes, the magistrate judge finds further support for the ALJ's conclusion that Thomas's records do not reflect objective findings. He notes in the Report and

---

[3] "Signs" are "abnormalities which can be observed, apart from . . . statements" and that "indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception." 20 C.F.R. § 416.928(b).

Recommendation that Thomas gives a Global Assessment of Functioning (GAF) score of 65.[4] That score is in the range of mild limitations, despite Thomas's diagnoses otherwise. Plaintiff objects to that characterization because Thomas's notes show lower GAF scores of 45 on several separate occasions (Tr. 158–70). Plaintiff fails to mention that the scores of 45 were from her earliest visits, in 2006. The most recent GAF scores were all 65, which is consistent with the ALJ's conclusion that Thomas's notes "generally reflect that the claimant has responded well" (Tr. 11). But the ALJ did not find the GAF scores helpful because the scores that suggested significant functional deficits did not correlate with objective data. He also found them problematic due to plaintiff's lack of crediblity (*id.*). The ALJ did not spell out with which objective data the GAF scores did not correlate. Nonetheless, the Court is to give the record a commensensical reading and not nitpick. The ALJ found overall improvement, and the GAF scores reflect that.

Thomas's medical source statements, which stated that plaintiff had no useful ability to deal with the public or with work stresses, were found by the ALJ to have little supporting them. To receive controlling weight, a physician's opinions must be well supported.

Finally, the ALJ concluded that the reports from Deppe, Peterson, and Kosmicki had more objective detail and deserved more weight than Thomas's. Deppe did not find any mental diagnosis and assessed plaintiff's ability to relate to others and withstand the stress of daily work "intact." Peterson's report noted that plaintiff's abilities to relate to others and deal with work situations could reach the "marked" level if she was symptomatic. Peterson also categorized plaintiff as "severely

---

[4] The GAF measures a "clinician's judgment of the individual's overall level of functioning." AM. PSYCHIATRIC ASS'N, DIAGNOSIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, TEXT REVISION, 32, 34 (4th ed. 2000). A GAF score ranging from 41–50 indicates serious symptoms; scores ranging from 51–60 indicate moderate symptoms; and scores ranging from 61–70 indicate mild symptoms. *Id.*

depressed" under the Beck Inventory. The ALJ commented that the Beck Inventory is "solely based on [plaintiff's] self-assessment," and consequently discounted Peterson's assessment to some degree (Tr. 12). The ALJ concluded that plaintiff could not be more than minimally symptomatic. Peterson did not offer any independent objective data, according to the ALJ. Kosmicki found plaintiff slightly limited in her ability to interact with co-workers, respond to usual work situations and changes in routine, and with "more than slight, but still satisfactory ability to interact appropriately with the public and with supervisors" (Tr. 12). Plaintiff's mental status was consistently friendly and cooperative. When she was described as having signs of depression and anxiety, it was mostly, again, plaintiff's self-report, as opposed to observed.

In conclusion, the Court **FINDS** that the ALJ has built an accurate and logical bridge from the medical evidence, including Thomas's and that of the other physicians, to his conclusion that plaintiff's mental impairments other than intellectual functioning are not severe or limiting.

While discussing the ALJ's discussion of Thomas, the magistrate judge correctly observes that Thomas's opinions regarding plaintiff's RFC are not entitled to any special significance according to 20 C.F.R. § 416.927(e) and SSR 96-5p. Plaintiff responds that § 416.927(d), which describes how the Commissioner evaluates medical opinions that are not given controlling weight, contradicts SSR 96-p. That is a misreading of the regulations. The regulation cited in the Report and Recommendation and SSR 96-5p refer to issues that are administrative findings, such as the claimant's RFC. Those issues are "not medical opinions." § 416.927(e). Therefore, they are reserved to the Commissioner.

## CONCLUSION

Based on the foregoing, the Court **FINDS** that the ALJ's decision that plaintiff Leslie Venus is not disabled is supported by substantial evidence in the record as a whole. The Court **ADOPTS** the Report and Recommendation (Doc. 32). Plaintiff's complaint (Doc. 3) is **DISMISSED WITH PREJUDICE**. Defendant's decision is **AFFIRMED** and judgment will be entered in its favor.

**IT IS SO ORDERED.**

**DATED:   October 4, 2011**

                                      **/s/ WILLIAM D. STIEHL**
                                          **DISTRICT JUDGE**